# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Valerie Jane Forte and Dr. Donna Anne Strigari, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Mercedes-Benz USA, LLC and Mercedes-Benz Group AG,<br><br>Defendants. | Case No.<br><br>**COMPLAINT - CLASS ACTION FOR VIOLATIONS OF: MAGNUSON-MOSS WARRANTY ACT; NEW JERSEY; UNLAWFUL TRADE PRACTICES ACT; AND COMMON LAW**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   PARTIES ......................................................................................... 4
      A.    Plaintiffs ......................................................................... 4
      1.  Valerie Jane Forte ........................................................................ 4
      2.  Dr. Donna Anne Strigari .............................................................. 7

      B.    Defendants ...................................................................... 9
      1.  Defendant Mercedes-Benz Group AG ......................................... 9
      2.  Defendant Mercedes-Benz USA, LLC ........................................ 11

III.  JURISDICTION ............................................................................. 12
      A.    Subject Matter Jurisdiction .................................................. 12
      B.    Personal Jurisdiction: MBUSA ............................................. 12
      C.    Personal Jurisdiction: MBG ................................................. 13

IV.   VENUE ......................................................................................... 13

V.    FACTUAL ALLEGATIONS ............................................................ 14
      A.    Technical Details and Subframe Defect ................................. 14
      B.    Mercedes' Knowledge of the Subframe Defect ....................... 17

      1.  Mercedes Was Made Directly Aware of the Defect from Class Member
      Complaints Collected by NHTSA .................................................. 18
      2.  Mercedes Knew of the Rear Subframe Defect Based on Class Member
      Complaints on Public Online Forums ............................................ 21
      3.  Mercedes Has Publicly Acknowledged the Consequences of Subframe
      Defects and Has Committed to Remedying Them ............................. 23

      C.    Mercedes' Inadequate Warranty Extension ........................... 24
      D.    Mercedes' Marketing ......................................................... 26

E.      Fraudulent Concealment Allegations ................................................... 28

VI.   TOLLING OF THE STATUTE OF LIMITATIONS ..................................... 30
A.     Fraudulent Concealment Tolling ......................................................... 30
B.     Estoppel ................................................................................................ 30
C.     Discovery Rule .................................................................................... 31

VII.  CLASS ALLEGATIONS ................................................................................ 32

VIII. CLAIMS FOR RELIEF ................................................................................. 38

IX.   RELIEF REQUESTED .................................................................................. 53

X.    DEMAND FOR JULY TRIAL ...................................................................... 54

## I.    <u>INTRODUCTION</u>

1.    Plaintiffs Valerie Jane Forte and Dr. Donna Anne Strigari ("Plaintiffs") bring this action individually for themselves and on behalf of all persons who purchased certain vehicles equipped with uniform and uniformly defective rear subframes designed, manufactured, distributed, warranted, marketed, and sold by Mercedes-Benz USA, LLC ("MBUSA") and Mercedes-Benz Group AG ("MBG") (collectively, "Mercedes").

2.    The vehicles at issue include at least 2010-2022 Mercedes-Benz C Class, 2010-2022 Mercedes-Benz E-Class, 2010-2015 Mercedes-Benz GLK-Class, 2010-2022 Mercedes-Benz G-Class, 2010-2022 Mercedes-Benz CLS-Class, 2010-2020 Mercedes-Benz SLK/SLC-Class, and 2010-2022 Mercedes-Benz SL-Class (together, the "Class Vehicles").

3.    The Class Vehicles' rear subframes have a dangerous safety defect ("Rear Subframe Defect") that causes the rear subframes, attached components, and nearby parts to prematurely rust or corrode, which (a) adversely affects the drivability of the Class Vehicles; (b) causes corrosion of other components on the underside of the Class Vehicles, including brake lines and rear axle; and (c) can cause the rear subframes to fail while the Class Vehicles are in motion, resulting in a sudden, unexpected loss of control for the driver.

4.      On information and belief, the subframes are substantially the same, from a mechanical engineering standpoint, in all Class Vehicles, in that the rear subframes in all Class Vehicles have a substantially similar design or manufacturing defect that causes water and salt to collect on the interior of the subframe, corroding it from the inside out.

5.      Because of the faulty design or manufacturing, the subframes can prematurely experience severe corrosion, especially near the attachment points for the suspension components, including the control arms that link the rear subframe to other parts of the suspension and steering system, including the rear wheels. The control arms, along with the subframe, are the main stabilizing force of a vehicle's suspension.

6.      Corrosion on the rear subframe makes the component and its attached suspension parts structurally unstable and prone to failure, destabilizing the rear suspension of the vehicles becomes destabilized.

7.      Class Vehicle owners can also experience corrosion of the rear suspension springs, rear brake lines, exhaust system, and rear axle, all of which are located near the rear subframe in the back of the vehicle.

8.      The defective subframes in the Class Vehicles pose a material safety risk, and therefore render the vehicles unfit for their intended purpose. Because

of this risk, Mercedes authorized dealers and independent mechanics often advise Class Vehicle owners with rear subframe corrosion not to drive their Class Vehicles, especially at high speeds. Many Class Vehicle owners are therefore left with vehicles that are too dangerous to drive, especially at typical highway speeds.

9.    Upon information and belief, subframe corrosion in the Class Vehicles happens "from the inside out."

10.    Mercedes has been aware of the Rear Subframe Defect for at least five years based on consumer complaints alone.  For instance, consumers have complained about the rear subframe corrosion on Mercedes vehicles to the NHTSA and on public discussion forums including MBworld.com.

11.    In the past, when customers who experienced the defect contact Mercedes, it disavows all knowledge of the problem and refuses to fully reimburse owners for the repairs.

12.    As a result of Mercedes' alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the Rear Subframe Defect and are rendered unsafe to drive.

13.    Despite having knowledge of the Rear Subframe Defect, Mercedes

has not admitted to the Rear Subframe Defect.  Mercedes finally sent notice some Class Vehicle owners regarding rear subframe corrosion until February 10, 2023, after other Mercedes Benz owners advised Mercedes Benz of their intentions to sue.

14.    Plaintiffs and Class Members have suffered actual damages, in that they a) were deprived of the benefit of their bargain at point-of-sale by paying for one thing—vehicles without a Subframe Defect—and receiving another, and/or b) incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the Subframe Defect, and/or c) were or will be forced to stop or limit using their vehicles prematurely or sell them at steep discounts.

15.    On behalf of themselves and all others similarly situated, Plaintiffs seek: (a) actual damages, (b) statutory damages, (c) punitive damages, (d) declaratory relief, (e) injunctive relief, (f) pre-and post-judgment interest and (g) attorneys' fees and costs.

## II.    PARTIES

### A.    Plaintiffs

#### 1.    Valerie Jane Forte

16.    Plaintiff Valerie Jane Forte resides in Whippany, New Jersey.

17.    Ms. Forte leases a 2020 Mercedes C300 which she leased on June 1, 2020, in pre-owned condition from Golden Bridges Mercedes Dealership in

Golden Bridges, New York.

18.    Ms. Forte's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the VIN Number WDDWF8EB3LR527201.

19.    Ms. Forte leases the Class Vehicle for her personal, family, and household use.

20.    Ms. Forte expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that the subframe of the Class Vehicle could prematurely corrode, making the vehicle dangerous to operate, nor was she aware from any source prior to purchase of the Class Vehicle of the immense expense she could incur in replacing the defective subframe. Had she known these facts, she would not have leased her Class Vehicle or would have paid less for it.

21.    Since purchasing the Class Vehicle, Ms. Forte has brought her vehicle in to be serviced and inspected at least as often as recommended by Mercedes at the Morristown Mercedes Benz in Morriston, New Jersey. Ms. Forte has stored the vehicle part of the time in an indoor garage and part of the time in an outside driveway parking spot when not in use.

22.    Ms. Forte first became aware of the subframe defect in March 2023,

when she was speaking with friends about news reports on the safety defect allegations made against Mercedes Benz. At the time Ms. Forte learned about the potential premature corrosion, the Class Vehicle had only 19,754 miles.

23.    As a result of the subframe defect, Ms. Forte has been left with a vehicle that is not fit for its intended purpose. Because the extensive subframe corrosion makes the vehicle potentially hazardous to drive, particularly on the highway, Ms. Forte uses her Class Vehicle only when she is without another means of transportation.

24.    Ms. Forte specifically purchased the Class Vehicle because of the reputation of Mercedes vehicles for safety. Ms. Forte regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, or in brochures at the dealership, and on the internet during the years before she leased her 2020 Mercedes-Benz C 300. Although she does not recall the specifics of how many Mercedes advertisements she saw before she leased her current Class Vehicle, she does recall that safety and reliability were frequent themes. Ms. Forte's experience as a Mercedes lessee for at least ten years, along with the advertisements about safety and reliability influenced her decision to lease her vehicle. Had those advertisements or any other Mercedes materials disclosed to Ms. Forte that the Class Vehicles had potentially defective subframes that would

render her vehicle unsafe and that she would be required to potentially pay thousands of dollars in repair costs to return her vehicle to a safe condition, she would not have purchased her Class Vehicle, or would have paid less for it.

### 2. Dr. Donna Anne Strigari

25.    Plaintiff Dr. Donna Anne Strigari ("Dr. Strigari") resides in Morris Plains, New Jersey.

26.    Dr. Strigari leases a 2021 Mercedes C300 which she leased in pre-owned condition from Golden Bridges Mercedes Dealership in Golden Bridges, New York.

27.    Dr. Strigari's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the VIN number W1KWFEB6MR621140.

28.    Dr. Strigari leases the Class Vehicle for her personal, family, and household use.

29.    Dr. Strigari expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that the subframe of the Class Vehicle could prematurely corrode, making the vehicle dangerous to operate, nor was she aware from any source prior to purchase of the Class Vehicle of the immense expense she could incur in

replacing the defective subframe. Had she known these facts, she would not have leased her Class Vehicle or would have paid less for it.

30.    Since leasing the Class Vehicle, Dr. Strigari brought her vehicle to be serviced and inspected at least as often as recommended by Mercedes at the Morristown Mercedes Benz in Morriston, New Jersey. Dr. Strigari has stored the vehicle substantially in an indoor garage when not in use.

31.    Dr. Strigari first became aware of the subframe defect in March 2023, when she was speaking with friends about news reports on safety defect allegations made against Mercedes Benz.  At the time Dr. Strigari learned about the potential premature corrosion, the Class Vehicle had only approximately 15,000 miles.

32.    As a result of the subframe defect, Dr. Strigari has been left with a vehicle that is not fit for its intended purpose.

33.    Dr. Strigari specifically leased the Class Vehicle because of the reputation of Mercedes vehicles for safety. Dr. Strigari regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, or in brochures at the dealership, and on the internet during the years before she leased her 2021 Mercedes-Benz C 300. Although she does not recall the specifics of how many Mercedes advertisements she saw before she leased her current

Class Vehicle, she does recall that safety and reliability were frequent themes. Dr. Strigari's past experience as a Mercedes lessee for nearly 20 years, along with the advertisements about safety and reliability influenced her decision to lease her vehicle. Had those advertisements or any other Mercedes materials disclosed to Dr. Strigari that the Class Vehicles had potentially defective subframes that would render her vehicle unsafe and that she would be required to potentially pay thousands of dollars in repair costs to return her vehicle to a safe condition, she would not have purchased her Class Vehicle, or would have paid less for it.

### B.    **Defendants**

#### 1.    **Defendant Mercedes-Benz Group AG**

34.    Defendant Mercedes-Benz Group AG ("MBG") is a German corporation with its principal place of business in Stuttgart, Germany.

35.    Prior to February 1, 2022, MBG was named Daimler AG.

36.    At all times relevant herein, MBG (itself and through its related entities) engaged in the business of designing and manufacturing the Class Vehicles.

37.    Upon information and belief, MBG was chiefly responsible for designing the Class Vehicles, including their defective rear subframes.

38.    Upon information and belief, MBG has, and at all relevant times had,

the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the design of Class Vehicles, the manner of Class Vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the Rear Subframe Defect. MBG has been directly involved in assisting, directing, and controlling MBUSA, and MBUSA's authorized dealers' handling of Class Member complaints regarding the rear subframe defect.

39.    MBG has held MBUSA out as its agent for all purposes in the United States, but especially for sales and marketing of Class Vehicles and for ongoing management of relationships with purchasers of Class Vehicles. It established MBUSA as its wholly-owned subsidiary company. It named MBUSA with its official "Mercedes-Benz" title. It provided MBUSA with marketing and technical materials avoiding any distinction between MBUSA and MBG, and instead representing MBUSA as nothing less than MBG's presence in the United States for purposes of selling and leasing "Mercedes-Benz" brand vehicles and providing related services.

40.    Based on the foregoing actions, Plaintiffs and Class Members justifiably relied on MBUSA's representations and omissions regarding the Class

Vehicles that were the responsibility of MBG in, for example, MBG's design of the Class Vehicles, and were injured because of their purchase of defective Class Vehicles.

### 2.    Defendant Mercedes-Benz USA, LLC

41.    Defendant Mercedes-Benz USA, LLC ("MBUSA") is a Delaware corporation with its principal place of business in Sandy Springs, Georgia.

42.    Prior to July 2015, MBUSA's principal place of business was in Montvale, New Jersey.

43.    MBUSA is a wholly owned subsidiary of MBG, and is responsible for the distribution, marketing and customer service for all Mercedes-Benz products in the United States

44.    At all times relevant herein, MBUSA has been and has acted as an agent of MBG and subject to MBG's control.

45.    At all times relevant herein, MBUSA (itself and through its related entities) engaged in the business of marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, throughout the United States.

## III.   JURISDICTION

### A.   Subject Matter Jurisdiction

46.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §
1332(d) and the Class Action Fairness Act because: the amount in controversy
exceeds $5,000,000, and Defendant MBG is a citizen of a foreign country and is thus
diverse from Plaintiffs and Class Members.  In addition, Defendant MBUSA is a
citizen of Georgia, and is therefore diverse from Plaintiffs. 28 U.S.C. §
1332(d)(2)(A).

### B.   Personal Jurisdiction: MBUSA

47.   This Court has personal jurisdiction over MBUSA because MBUSA is
authorized to do business in this District, conducts substantial business in this
District, and is registered to do business in the District, and some of the actions
giving rise to the complaint took place in the District.

48.   Each of these facts independently is, and these facts together are,
sufficient to render the exercise of jurisdiction by this Court over MBUSA
permissible under traditional notions of fair play and substantial justice.

### C.     __Personal Jurisdiction: MBG__

49.    This Court has personal jurisdiction over MBG because MBG has sufficient contacts in this District that relate to the causes of action pleaded against MBG.

50.    By using MBUSA as its channel for marketing, distributing, warranting, selling and leasing the MBG-designed Class Vehicles in the District and the United States, MBG itself has continuously and deliberately taken affirmative steps to make MBG-designed vehicles and replacement parts available to consumers in the District, including Class Members; created continuing obligations between MBG and residents of the District; and purposefully availed itself of the benefits and protections of conducting business in the District. Thus, Plaintiffs' claims here arise out of MBG's contacts with this District.

51.    These constitute a strong relationship between the MBG, this District, and the allegations herein, and create a sufficient basis to render the exercise of jurisdiction over MBG by this Court permissible under traditional notions of fair play and substantial justice.

## IV.    __VENUE__

52.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendants, as corporations, are deemed to reside in any judicial district in which

they are subject to personal jurisdiction.

53.    Additionally, Defendants transact business within the District and some of the events establishing the claims occurred in this District.

## V.    FACTUAL ALLEGATIONS

### A.    Technical Details and Subframe Defect

54.    Many vehicles, including the Class Vehicles, have a rear subframe that is located on the back undercarriage and that spans the width of the car in between the two rear wheels. The rear subframe faces the exterior of the vehicle and is partially covered by a splash shield but otherwise is exposed to the elements.

55.    The diagram below illustrates the rear subframe of a 2019 Mercedes C-300, along with the components mounted to it:



**Diagram shows the entire subframe and numbers 2 through 6 represent parts in the rear subframe (the W205**

**model is for years 2015-2021 of the vehicle)**

56.    A subframe is an integral component of a vehicle's structure. It attaches to the unibody of the vehicle.  It serves as the mounting point for the engine, steering and suspension. The rear subframe performs a critical role in the stability and ride quality, central to vehicle dynamics and safety, as well as meeting customer expectations for the ride.

57.    Because the subframe attaches to the underbody of the vehicle, it is unprotected from the elements. As a consequence, rust can occur – either as surface rust or extensively so that it perforates hole in the metal. Corrosion from rust compromises the metal leading to breakage in vehicle components affecting safety.

58.    A non-defective rear subframe (one that is not corroded by rust) should last the life of a vehicle without needing replacement.  Indeed, in its European markets, every Mercedes vehicle comes with a 30-year corrosion warranty, which guarantees that if the body of a Mercedes vehicle "is perforated due to corrosion from the inside out anytime within 30 years, Mercedes-Benz will repair the damage at one of its workshops, at no cost to the owner."  Mercedes has offered this warranty in Europe for the past 25 years.

59.    The subframe is mounted underneath the vehicle, making it difficult to see unless specifically inspected.  Even if inspected, the subframe is made of

tubular carbon steel and, upon information and belief, rusts from the inside out, meaning a typical visual inspection of exterior rust will not reveal the corrosion until the subframe is close to failure.

60.    Therefore, the defect is difficult to see, even in a meticulously maintained vehicle, and even by a trained mechanic.  As a result, the Class Vehicles provide little to no warning before becoming dangerously unstable.

61.    A failure of the subframe where it meets suspension components, such as a control arm or track bar, is dangerous because the attached suspension components hold the drive wheels in place and in proper alignment.

62.    If the vehicle is in motion when the subframe fails at the attachment point, the driver's ability to control the vehicle and bring it to a safe stop is compromised. The steering, braking, acceleration of the vehicle becomes unpredictable. As one vehicle owner complained to NHTSA:

> "The rear 'K' suspension subframe assembly had to be replaced because of rust internally in the vehicle frame.  There was no other rust, internally or externally visible, on the entire car. My mechanic indicated that the car would not pass inspection without major repairs at a cost of over $2800.  **If the subframe became disconnected, steering control would be lost resulting in a potentially serious injury due to loss of directional control at high speeds.**  My mechanic has already replaced parts to repair this issue on at least 4 other cars within a short period of time."

NHTSA database, NHTSA ID No. 11432196 (2011 Mercedes E350; date of incident September 8, 2021 (emphasis added).

63.    Vehicles with subframe corrosion can also experience corrosion of the brake lines. When a vehicle's brake lines corrode, they may crack and begin to leak brake fluid. Compromised brake lines can cause driver to lose total or partial use of their brakes, as some owners have mentioned in online forum discussions.

64.    Plaintiffs and Class Members were also injured at point of sale by not receiving the benefit of their bargain: vehicles without a Subframe Defect.

65.    Class Vehicles with corroded subframes experience significant diminution in resale value unless the rear subframe is repaired.

66.    No reasonable consumer would purchase a Class Vehicle, considered a luxury vehicle, if they knew that it was likely to become unsafe and/or inoperable due to corrosion of the rear subframe in less than ten years, even when meticulously maintained.

**B.    Mercedes' Knowledge of the Subframe Defect**

67.    Mercedes was aware, or should have been aware, of the Rear Subframe Defect, based on, among others, the following sources:

a.  Numerous and consistent consumer complaints collected by NHTSA about the Rear Subframe Defect;

b.  Numerous and consistent consumer complaints made directly to

Mercedes about the Rear Subframe Defect;

    c.   Numerous and consistent consumer complaints made on online vehicle owner forums; and

    d.   Actions taken by MBG in non-U.S. markets to remedy the Rear Subframe Defect.

    **1.    Mercedes Was Made Directly Aware of the Defect from Class Member Complaints Collected by NHTSA**

68.    Class Vehicle owners lodged complaints about the Rear Subframe Defect with NHTSA beginning as early as 2018. Notably, NHTSA complaints here indicated that Mercedes was aware of the problem and refusing to correct it. The vehicle complaints to NHTSA include:

    a.   "RIGHT REAR TRAILING ARM MOUNT BECAME DETACHED FROM SUB FRAME. SHEET METAL ON REAR SUSPENSION SUB FRAME RIPPED / TORE SO THAT REAR TRAILING ARM IS ONLY ATTACHED TO LOWER PART OF MOUNT, AND NOT ATTACHED TO VEHICLE. **NO ACCIDENT, BUT VEHICLE IS EXTREMELY UNSTABLE TO DRIVE WHEN HEAVY BRAKING COULD OCCUR!** VEHICLE VEERS SUDDENLY TO THE RIGHT! CONCERN BESIDES INSTABILITY IS THAT LOOSE TRAILING LINK COULD PUNCTURE FUEL TANK LESS THAN AN INCH AWAY.  FIRST NOTICED WHILE DRIVING ON I-4 WHEN A VEHICLE CHANGED INTO MY LANE ABRUPTLY, AND I HAD TO FORCEFULLY APPLY BRAKES."

NHTSA database, NHTSA ID No. 11064613 (2011 MB C300; date of incident Jan. 23, 2018).

b.      "The contact owns a 2010 Mercedes- Benz E 350. The contact stated that while driving there was an undetermined abnormal noise detected. The vehicle was taken to an independent mechanic where it was informed the sub frame was corroded. The independent dealer was contacted.  The vehicle was diagnosed or repaired. **The manufacturer was notified electronically however no response was provided.** The failure mileage was approximately 171,000."

NHTSA database, NHTSA ID No. 11436456 (2010 Mercedes E350; date of incident Sept. 28, 2021) (emphasis added).

c.      "This car has 63,792 miles on it and has been continuously garaged and well cared for.  All maintenance has been done timely and by Mercedes-Benz of Tysons Corner (Virginia) since it was purchased there on 01/08/14. All required maintenance was completed as advised and the car was covered under a 7 year 75,000 mile warranty.  At the recent regularly scheduled yearly maintenance service completed on 12/28/21 we were advised that the that the 'rear sub-frame is beginning to rust through and has a hole on the right rear (RR) and the recommendation was the 'replacement of rear sub-frame soon' at an estimated cost of $4,242.40.  This car has never been in an accident.  In speaking to the MB service representative about this issue, **I was advised that this problem has happened to several C300's from the period 2009-2014 and that Mercedes Benz was not accepting any responsibility for the issue in the US but had issued recalls in other countries.**  He said Mercedes maintains that it is a 'wear and tear' issue. This car has not been abused and has been well maintained.  This is not an area of the country where you would expect to see this type of corrosion unless the part was defective in some manner. In researching the problem on the internet, several people write about experiencing a failure of this part although the cars were older than ours and had more mileage on them.  **It appears to be a safety issue should the part rust through as it could puncture the gas tank or cause the rear wheels to buckle or cause a loss of control of the auto from the auto fishtailing.**  I have never seen this happen to a car before and I am 75 years old and have owned a number of automobiles over the years."

NHTSA database, NHTSA ID No. 11450424 (2014 Mercedes C300; date of incident Dec. 28, 2021) (emphasis added).

> d.     "The car was brought in for scheduled maintenance and they told me that my rear sub frame rusted out and had snapped. Car is only 7 years old, always garaged, basically a main part rusted out. Mercedes prides itself on durability and safety.  There were no warning lights, alarms, nothing.  Whenever I braked the rear end of the car would slide to the left and I had to try and adjust accordingly. **Prior to bringing the car in for its maintenance I was reluctant to drive it on highways and at higher speeds**. Now that I am aware of the problem, **had the rear of the car given out while I was on a highway, I had the potential to roll over and possibly blown up had the gas tank been impacted**. I researched the issue on Google and found many instances of others having the same issue, with the same part, luckily no one appears to have been killed as yet.  As I mentioned this was never picked up during all the scheduled maintenance work, nor state inspections, all handled by this dealership.   The dealership is in the process of replacing the part and all work associated with that replacement.  I don't know if they kept the part or tossed it out, but will ask. No one else has seen the car or rusted part other than the dealership. **I'm also sending you a copy of the letter I sent to the dealership and Mercedes-Benz Home Office**."

NHTSA database, NHTSA ID No. 11456512, (2014 Mercedes E350; date of incident March 7, 2022 (emphasis added).

> e.     "The contact[']s wife owns a 2014 Mercedes-Benz E-350. The contact stated that while driving at various speeds, the rear of the vehicle was swerving. The contact stated while the brake pedal was depressed, the rear of the vehicle shifted. No warning light was illuminated. The vehicle was taken to the dealer where it was diagnosed that the rear subframe was rusted and needed to be replaced. The vehicle was repaired. **The manufacturer was notified of the failure, but no assistance was provided.** The contact was awaiting a response. The failure mileage was approximately 72,000."

NHTSA database, NHTSA ID No. 11501098, date of incident December 10, 2022 (emphasis added).

### 2.    Mercedes Knew of the Rear Subframe Defect Based on Class Member Complaints on Public Online Forums

69.    Many Class Vehicle owners posted complaints about the Rear Subframe Defect on public online forums. The following is a small sampling of such complaints:

> a.    "So glad to find this forum and so many postings on subframe rust issue on C & E class cars. Mercedes executives should take this safety issue seriously to all it's a loyal customer base before they loose [sic] credibility.
> "I am the first owner of 2010 GLK 350 I've been doing regular services and repairs per the service schedule and none of the dealers found out that the rear subframe is rusted till last week there was a brake fluid low sign which I topped off but the sign kept coming back. The technician said the issue is not just he Break oil leak it is the entire braking system is bad due to we are sub frame rust and will cost anywhere between 4K to 10K. I am like WTF you guys check the cars regularly couldn't find this issue earlier and he is like it is very common in C and eat class you need to call Mercedes to get any help from the company. Call the company and directed me to complain in mercedes-benz.custhelp.com/app/ask but there is not correct drop-down to file complaint against. We all need to filed litigation against Mercedes, it is a **highly safety issue** that Mercedes should fix at no cost. I have filed complain on national highway safety as well. **Did anyone got a response back from Mercedes knowing that there are so many complains per this thread**?"

https://mbworld.org/forums/c-class-w204/805501-rotted-rear-subframe-2.html posted Oct. 13, 2022 (2010 GLK 350) (first bold in original; second emphasis added) (last visited Mar. 6, 2023).

b.    "**I opened a case with MBUSA and they told me to pound sand**. Very disappointed that a luxury ground like MB would have this kind of problem I'm very disappointed that MBA offered no relief. We purchased the car brand new and baby with all the scheduled maintenance and garage kept. So I replaced it myself on our 2010 C 300 Sport 4MATIC. I found a new sub frame online for $1000 and it was perfect. Took me a few days because I was going slow and being careful. I'm sure an experienced mechanic could get it done in a day."

https://mbworld.org/forums/c-class-w204/805501-rotted-rear-subframe-2.html posted Oct. 23, 2022 (2010 C300) (emphasis added) (last visited Mar. 6,2023).

70.    Online discussions from UK-based owners show not only that Mercedes was aware of this problem, it cured the defect under its 30-year warranty offered in Europe but not in the US. For example:

"Hi just joined forum, I've just discovered a corroded sub frame on my 60 plate 220 C class which was in such a dangerous state. Car was like skating on ice. I understand that Mercedes has a 30 year non corrosion warranty. Currently being examined at Mercedes Stratford in London. This is a warranty issue awaiting for decision on this as I expect my car to be repaired under the warranty. My Mercedes is very well cared for by my independent garage. Surely my car along with many more should have been recalled to have these sub frames inspected and or repaired. I'm surprised I wasn't involved in an accident because of this. Hopefully there hasn't been any accidents due to this before. Sitting tight and waiting for sanity to prevail."

https://forums.mercedesclub.org.uk/index.php?threads/mercedes-220-corrosion-on-sub-frame.186041/  posted Dec. 1, 2020 (Mercedes C 220) (last visited Mar. 6, 2023).

### 3. Mercedes Has Publicly Acknowledged the Consequences of Subframe Defects and Has Committed to Remedying Them.

71. On March 28, 2022, Mercedes issued a "Recall Campaign Initial Information" to Dealers, General Managers, Service Managers, and Parts Managers, to check and replace rear axle carrier. Mercedes described the issue:

> Mercedes-Benz AG ("MBAG"), the manufacturer of Mercedes-Benz vehicles, has determined that on certain Model Year ("MY") 2022 S-Class and Maybach (223 platform) vehicles, **the sub frame welds for the thrust arm on the rear axle carrier might not meet current production specifications**. In this case, the **welds could fail suddenly and without prior warning and may cause the thrust arm to detach from the rear axle carrier**. As a result, the vehicle might sway due to roadway influenced excitation. In addition, the **vehicle could pull to one side in the event of emergency braking**. Should this be the case, the controllability of the vehicle would be impaired, increasing the risk of a crash.

Vehicle owners were instructed to stop driving those vehicles. This recall acknowledged consequences from a subframe defect much like those Class Members raised in online forum discussions. One vehicle owner complained, years before:

> "RIGHT REAR TRAILING ARM MOUNT BECAME DETACHED FROM SUB FRAME. SHEET METAL ON REAR SUSPENSION SUB FRAME RIPPED / TORE SO THAT REAR TRAILING ARM IS ONLY ATTACHED TO LOWER PART OF MOUNT, AND NOT ATTACHED TO VEHICLE. **NO ACCIDENT, BUT VEHICLE IS EXTREMELY UNSTABLE TO DRIVE WHEN HEAVY BRAKING COULD OCCUR! VEHICLE VEERS SUDDENLY TO THE RIGHT!** CONCERN BESIDES INSTABILITY IS THAT LOOSE TRAILING LINK COULD PUNCTURE FUEL TANK LESS THAN AN INCH AWAY. FIRST NOTICED WHILE DRIVING ON

I-4 WHEN A VEHICLE CHANGED INTO MY LANE ABRUPTLY, AND I HAD TO FORCEFULLY APPLY BRAKES."

NHTSA database, NHTSA ID No. 11064613 (2011 MB C300; date of incident Jan. 23, 2018) (emphasis added).

72.     In January 2022, Mercedes recalled over 38,000 vehicles in Canada where rust led to corrosion – this time in the front, rather than rear – subframe, though the consequences of the subframe failure were much like those Class Members suffered here. Transport Canada records show as of January 7, 2022:

Issue:
On certain vehicles, the **front subframe could corrode over time. If this happens, suspension or steering parts could eventually detach from it. This could affect steering control**.

Safety Risk:
**A loss of steering control could increase the risk of a crash**.

Corrective Actions:
Mercedes-Benz will notify owners by mail and instruct you to take your vehicle to a dealer to inspect the front subframe (integral carrier) and replace it, if necessary. [Emphasis added.]

## C.    Mercedes' Inadequate Warranty Extension

73.    On information and belief, on February 10, 2023, Mercedes began disseminating the Extended Warranty Notice to its authorized dealerships.  For instance, on February 10, 2023 a copy of the Extended Warranty Notice dated February    10,    2023    was    posted    on    MBWorld.org.

https://mbworld.org/forums/extended-warranty-discussions/859431-rear-subframe-extended-warranty.html (last visited Mar. 6, 2023).

74.    The Extended Warranty fails to cover all the Class Vehicles and is therefore insufficient.

75.    Additionally, Mercedes' Extended Warranty is insufficient to remedy the economic injuries suffered by Plaintiffs and Class Members because it does not adequately compensate Plaintiffs for the overpayment injury incurred at the point of purchase, when Plaintiffs paid a premium for a luxury vehicle that contained a serious safety defect and was therefore not as safe, reliable, or durable as advertised. Mercedes has known about the existence of the Rear Subframe Defect for at least fourteen years and has knowingly concealed the defect for that entire time, all to justify charging a premium for an unsafe product.

76.    The Extended Warranty also fails to provide reimbursement for many, and in some cases all, of the costs incurred or to be incurred by Plaintiffs and Class Members arising from the Rear Subframe Defect, including:

      a.  rear subframe replacements completed by Mercedes-certified mechanics or independent mechanics and/or using non-Mercedes parts;

      b.  replacement or repair of parts damaged as a result of rear subframe

failures while in motion, including a Class Vehicles' gas tank, torsion bar, and wheels;

c. ancillary costs incurred as a result of the Rear Subframe Defect, including towing costs, rental car fees, and inspection fees; and

d. loss of resale value by Class Members and Plaintiffs who sold their Class Vehicles at a diminished value due to the Rear Subframe Defect.

77.    In sum, Mercedes' proposed Extended Warranty does not adequately remedy the serious safety implications caused by the Rear Subframe Defect or adequately reimburse Plaintiffs and Class Members for past or future economic injuries.

### D.    **Mercedes' Marketing**

78.     Mercedes manufactured and sold the Class Vehicles with the Rear Subframe Defect, while willfully concealing the serious safety and reliability impacts of the defect, as well as the inferior quality and limited longevity of the Class Vehicles' rear subframes.

79.    Mercedes directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the internet, billboards, print publications, and through other mass media.

80.    Mercedes regularly releases advertisements and marketing materials

touting the reliability of its vehicles and the brand's commitment to safety.

    a. In a 2016 video commercial advertisement, Mercedes states that "for 130 years we have been doing everything possible to make your Mercedes even safer."

    b. On October 20, 2022, Mercedes released a press release stating "[t]he company is pursuing a clear goal: to achieve accident-free driving by 2050."

81. None of Mercedes' advertisements warned customers that their vehicles were likely to experience severe, premature corrosion of the rear subframe that would impact their ability to safely drive the Class Vehicles.

82. Plaintiffs and Class Members were exposed to Mercedes' long-term, national multimedia marketing campaign, which focused on the safety and reliability of Mercedes vehicles, as well as the advanced technology used by Mercedes to keep the Class Vehicles corrosion-free. Plaintiffs and Class Members justifiably chose to purchase their Class Vehicles based on Mercedes' misleading marketing, which concealed the true, defective nature of the Class Vehicles' rear subframes.

83. Further, Mercedes knowingly misled Class Members about the defective, unsafe nature of the Class Vehicles.

84.    Despite Mercedes' knowledge of the defect, it told Class Members who complained to customer service about the Rear Subframe Defect that it was not responsible for the defect, and that, absent a warranty, it was not responsible for full reimbursement for the repair.

### E.    Fraudulent Concealment Allegations

85.    Plaintiffs' claims arise out of Mercedes' fraudulent concealment of the Rear Subframe Defect and the serious safety issues it causes, and its representations about the world-class quality and safety of the Class Vehicles.

86.    To the extent that Plaintiffs' claims arise from Mercedes' fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including specifically prior to and at the time they purchased their Class Vehicles, Mercedes knew, or was reckless in not knowing, of the Rear Subframe Defect; Mercedes was under a duty to disclose the Defect based upon its exclusive knowledge of it, and its active concealment of it; and Mercedes never disclosed the Defect to Plaintiffs or the public at any time or place or in any manner.

87.    Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Mercedes:

a.  Mercedes actively failed to disclose the Rear Subframe Defect from Plaintiffs and Class Members while simultaneously touting the safety and world- class quality of the Class Vehicles. Representatives of Mercedes customer service and various Mercedes-authorized dealerships have denied the existence and wide prevalence of the defect when specifically questioned by Class Vehicle owners, as evidenced by complaints to the NHTSA and reported in online discussion forums.

b.  Mercedes knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Rear Subframe Defect. Mercedes concealed the defect and made representations about the safety, world-class quality, and other attributes of the Class Vehicles.

c.  Mercedes failed to disclose material information regarding the Rear Subframe Defect and made representations about the world-class quality, sophistication and state-of-the-art safety of the Class Vehicles, at the introduction of certain models of Class Vehicles to the market, continuing through the time of sale, and on an ongoing basis. And when vehicle owners brought their Vehicles to Mercedes with heavily corroded rear subframes, Mercedes denied responsibility

for the Rear Subframe Defect, as illustrated by the complaints lodged.

With NHTSA and as recounted in the online forum discussions.

## VI.     <u>TOLLING OF THE STATUTE OF LIMITATIONS</u>

### A.     <u>Fraudulent Concealment Tolling</u>

88.    Mercedes has known of the Rear Subframe Defect in the Class Vehicles since well before Plaintiffs and Class Members purchased their Class Vehicles, and yet concealed from or failed to disclose to Plaintiffs, Class Members, and the public of the full and complete nature of the Rear Subframe Defect, even when directly asked about it by Class Members during communications with Mercedes, Mercedes Customer Care, Mercedes dealerships, and Mercedes service centers. Mercedes continues to conceal the defect.

89.    Any applicable statute of limitation has been tolled by Mercedes' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### B.     <u>Estoppel</u>

90.    Mercedes was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Vehicles. Mercedes actively concealed – and continues to conceal – the true character, quality, and nature of the Class Vehicles and knowingly made misrepresentations

about the world-class quality and state-of-the-art safety of the Class Vehicles. Plaintiffs and Class Members reasonably relied upon Mercedes' knowing misrepresentations and active concealment of these facts. Based on the foregoing, Mercedes is estopped from relying on any statutes of limitation in defense of this action.

### C.    **Discovery Rule**

91.    The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their Class Vehicles contained the Rear Subframe Defect.

92.    However, Plaintiffs and Class Members had no realistic ability to discern that the Class Vehicles were defective until – at the earliest – after a professional inspection revealed significant corrosion of the rear subframe.  As alleged, because the corrosion occurs "from the inside out" the defect would not have been apparent until the rear subframe was dangerously corroded, near total failure, and rendered the Class Vehicle unsafe to operate.  Even then, Plaintiffs and Class Members had no reason to know the corrosion in the rear subframes was caused by a defect in the Class Vehicles because of Mercedes' active concealment of the Rear Subframe Defect.  Not only did Mercedes fail to notify Plaintiffs and Class Members about the Rear Subframe Defect, but Mercedes in fact also denied any knowledge of

or responsibility for the defect when directly asked about it. Thus, Plaintiffs and Class Members were not reasonably able to discover the Rear Subframe Defect until after they had purchased their Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that the Rear Subframe Defect caused their rear subframes to corrode to the point where their vehicles were no longer able to be operated safely and, in some cases, where they failed while the vehicle was in motion, causing the driver to partially or fully lose control of the vehicle.

## VII.  **CLASS ALLEGATIONS**

93.    Plaintiffs bring this lawsuit as a class action on behalf of himself and all other similarly situated individuals pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2), (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

94.    Plaintiffs bring this class action as a nationwide class on behalf of themselves and all other similarly situated members of the proposed class (the "Class Members"), defined as follows:

All residents of the United States and its territories who are current or former owners or lessees of a Class Vehicle. A "Class Vehicle" is a vehicle of any of the following models/model years:

> 2010-2022 Mercedes-Benz C-Class
>
> 2010-2022 Mercedes-Benz E-Class
>
> 2010-2015 Mercedes-Benz GLK-Class
>
> 2010-2022 Mercedes-Benz G-Class
>
> 2010-2022 Mercedes-Benz CLS-Class
>
> 2010-2020 Mercedes-Benz SLK/SLC-Class
>
> 2010-2022 Mercedes-Benz SL-Class

95.    Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.

96.    The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the court. Class Members are readily identifiable from information and records in Mercedes' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

97.    Plaintiffs' claims are typical of the claims of Class Members in that the Plaintiffs, like all Class Members, purchased a Class Vehicle designed, manufactured, and distributed by Mercedes.  Plaintiffs, like all Class Members, have been damaged by Mercedes' misconduct in that he has purchased a vehicle he

would not have purchased, or for which he would have paid less, and incurred or will incur the cost of service relating to and caused by the Rear Subframe Defect and/or have experienced diminished ability to use their Class Vehicles for their intended purpose, and/or have experienced diminution in resale value as a result of the Rear Subframe Defect. Furthermore, the factual bases of Mercedes' misconduct are common to Plaintiffs and all Class Members and represent a common thread of misconduct resulting in injury to the Plaintiffs and all Class Members.

98.    Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective automotive vehicles.

99.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so. Neither of the Plaintiffs nor their counsel have interests adverse to those of the Class.

100.    There are numerous questions of law and fact common to Plaintiffs and Class Members, the answers to which will advance the resolution of the litigation as to all Class Members and which predominate over any individual question. These common legal and factual issues include:

      a.    whether the rear subframe in the Class Vehicles is defective;

b.   whether and when Mercedes knew or should have known about the Rear Subframe Defect, and, if so, how long Mercedes knew or should have known of the Defect;

c.   whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

d.   whether Mercedes had and/or has a duty to disclose the defective nature of the Class Vehicle to Plaintiffs and Class Members;

e.   whether Mercedes omitted and failed to disclose material facts about the Class Vehicles;

f.   whether Mercedes' failure to disclose the true defective nature of the Class Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing Class Vehicles;

g.   whether Mercedes represented, through its words and conduct, that the Class Vehicle had characteristics, uses, or benefits that they did not actually have;

h.  whether Mercedes represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another;

i.  whether Mercedes advertised the Class Vehicles with the intent not to sell them as advertised;

j.  whether Mercedes' affirmative misrepresentations about the true defective nature of the Class Vehicles were likely to create confusion or misunderstanding, and were therefore fraudulent;

k.  whether Mercedes' affirmative misrepresentations about the true defective nature of the Class Vehicles were and are deceptive;

l.  whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

m. whether Plaintiffs and the other Class Members are entitled to a declaratory judgment stating that the rear subframes in Class Vehicles are defective and/or not merchantable;

n. whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

o. whether Mercedes should be declared financially responsible for notifying Class Members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the Rear Subframe Defect in Class Vehicles; and

p. whether Mercedes is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose and repair the defective rear subframes, including corrosion to nearby vehicle components (suspension springs, brake lines, etc.) and damage to the Class Vehicles caused by subframe failure while in motion, or for those Class Members who did not retain their Class Vehicles, for the diminution in value of the Class Vehicles upon resale.

101. Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages from Mercedes' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

102.    Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Mercedes' misconduct. Absent a class action, Class Members will continue to incur damages, and Mercedes' misconduct will continue without remedy.

103.    Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the court and the litigants and will promote consistency and efficiency of adjudication.

## VIII.  CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Breach of Express Warranty – Magnuson-Moss Warranty Act
(against MBUSA only)**

104.    Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C.§ 2301(3).

105.    Defendant MBUSA is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

106.    The Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

107.    MBUSA provides Plaintiffs and Class members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

108.    MBUSA breached the express warranty by refusing to replace or repair, free of charge, any defective vehicle component, including the defective rear subframe or other suspension components impacted by the Rear Subframe Defect.

109.    At the times MBUSA sold the Class Vehicles, it knew of the Rear Subframe Defect and offered an express warranty with no intention of honoring said warranty with respect to known defects.

110.    Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

111.    MBUSA refuses to acknowledge the existence of the Rear Subframe Defect or to reimburse Class Members for the repair of their defective rear subframes. Despite repeated demands by Class Members that MBUSA pay for

replacements rear subframes, the labor associated with the subframe replacement, and associated incidental costs, MBUSA refuses to do so. MBUSA's refusal to pay for the installation of replacement rear subframes on the Class Vehicles violates 15 U.S.C. § 2304(d)(1).

112.   Class Members have afforded MBUSA a reasonable opportunity to cure its breach of the express warranty but failed to do so.

113.   As a direct and proximate result of MBUSA's breach of its express written warranties, Plaintiffs and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs required to return their Class Vehicle to a safe condition, the costs of needed present and future repairs, an inability to use the Class Vehicles for their intended purpose, and diminution of resale value, in an amount to be determine at trial.

114.   Plaintiffs seek equitable relief, declaratory relief, actual damages, attorneys' fees and expenses, and punitive damages, as permitted under the Magnuson Moss Warranty Act. 15 U.S.C. § 2310(d).

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty – Magnuson-Moss Warranty Act
### (against MBUSA only)

115.   Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C.

§ 2301(3).

116.   Defendant MBUSA is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

117.   The Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

118.   MBUSA extended an implied warranty to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in its Class Vehicles and its Class Vehicles' suspension systems, including the rear subframe.

119.   MBUSA breached this implied warranty by selling Class Vehicles with the Rear Subframe Defect, which were neither merchantable nor fit for their intended purpose.

120.   As a direct and proximate result of MBUSA's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs of upwards of $3,500 required to return their Class Vehicle to a safe condition, the costs of needed present and future repairs, an inability to use the Class Vehicles for their intended purpose, and diminution of resale value, in an amount to

be determine at trial.

121.   Plaintiffs seek equitable relief, declaratory relief, actual damages, attorneys' fees and expenses, and punitive damages, as permitted under the Magnuson Moss Warranty Act. 15 U.S.C. § 2310(d).

### **THIRD CAUSE OF ACTION**
**Fraudulent Non-disclosure**

122.  Mercedes failed to disclose material facts concerning the quality of the Class Vehicles, and is liable for fraudulent non-disclosure.

123.  Mercedes failed to disclose material facts concerning the quality of the rear subframes in the Class Vehicles, including the rear subframes' susceptibility to corrosion when exposed to normal environmental conditions.

124.  Mercedes co failed to disclose material facts concerning the Rear Subframe Defect, which causes the rear subframe on the Class Vehicles to experience severe and premature corrosion. The corrosion happens "from the inside out," beginning on the interior of the subframe, and is difficult to see until the subframe is perforated and close to collapsing. Mercedes knew that Plaintiffs and Class Members would not be able to inspect or otherwise detect the Rear Subframe Defect prior to purchasing or leasing the vehicles.

125. Mercedes furthered and relied upon this lack of disclosure to encourage Class Members to pay significant sums out of pocket to replace their

defective subframes, which Mercedes falsely represented as being damaged as the result of normal "wear and tear," all the while concealing the true nature of the Defect from Plaintiffs and Class Members. When Class Members complained of the Defect, Mercedes further denied the very existence the Rear Subframe Defect and the dangers it poses to passengers or drivers of Class Vehicles.

126. Mercedes committed the foregoing acts and omissions to boost confidence in its vehicles and falsely assure purchasers of Mercedes vehicles that the Class Vehicles were safe, high-quality, long-lasting, warranted, and reliable vehicles, and failed to disclose the information in order to prevent harm to Mercedes' and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase. These omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and omissions played a significant role in the decision to purchase the Class Vehicles.

127. Plaintiffs and Class members, directly or indirectly, were exposed to Mercedes' advertisements and promotional materials prior to purchasing or leasing their Class Vehicles. The misleading statements about Class Vehicles' safety and reliability, as well as Mercedes' omission of the truth about the defective nature of the Class Vehicles' rear subframes, influenced Plaintiffs and

Class members' decisions to purchase Class Vehicles. If Mercedes had instead chosen to disclose the truth, Plaintiffs would have had opportunities to receive information about the defect if Mercedes chose to disclose it, including at dealerships, on Mercedes' website, in radio or television advertisements, brochures, press releases or in other promotional materials, as well as in consumer forums and reviews.

128. Mercedes had a duty to disclose the Rear Subframe Defect in the Class Vehicles because they were known and/or accessible only to Mercedes; Mercedes had superior knowledge and access to the facts; and Mercedes knew the facts were not known to, or reasonably discoverable, by Plaintiffs and Class Members. Mercedes also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, safety, longevity, and usability. Even when faced with customer complaints, Mercedes failed to disclose the true cause of the problems.

129. As a result, Class Members were misled as to the true condition of the Class Vehicles once at purchase and then again when Class Members complained of the severe, premature corrosion of their subframes to Mercedes.

130.   The undisclosed facts were material because they directly impact the safety, longevity, value, appeal, and usability of the Class Vehicles purchased by Plaintiffs and Class Members.  Whether a manufacturer's product is as stated by the manufacturer, backed by the manufacturer, and usable for the purpose it was purchased, are material concerns to a consumer.

131.   Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, and avoid expensive recalls that would hurt the brand's image, and did so at the expense of Plaintiffs and Class Members.

132.   On information and belief, Mercedes has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class Members and conceal material information regarding the Rear Subframe Defect that exists in the Class Vehicles.

133.   Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did have they known of the concealed and/or suppressed facts, *i.e.,* they would not have purchased Class Vehicles, or would have paid less for them.  Plaintiffs' and Class Members' actions were justified because they had no way of knowing that the Class Vehicles were susceptible to severe, premature corrosion of the rear subframe and nearby components. Rather, Mercedes

was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

134.  Because of the non-disclosure of material facts, Plaintiffs and Class Members sustained damage because they negotiated and paid value for the Class Vehicles not considerate of the Rear Subframe Defect that Mercedes failed to disclose and paid out-of-pocket to replace the defective rear subframe or experienced significant diminution of their Class Vehicle's value. Had they been aware of the concealed Rear Subframe Defect that existed in the Class Vehicles, Plaintiffs would have paid less for his vehicle or would not have purchased them at all.

135.  As a direct and proximate result of Mercedes' failure to disclose material facts, Plaintiffs and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs required to return their Class Vehicle to a safe condition, the costs of needed present and future repairs, an inability to use the Class Vehicles for their intended purpose, and diminution of resale value, in an amount to be determine at trial.

136.  Mercedes' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being to enrich Mercedes. Mercedes' conduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

137.  Plaintiffs and Class Members seek an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, as well as declaratory relief. In addition, Plaintiffs and Class Members are entitled to recover actual damages, together with appropriate penalties, including but not limited to treble damages, attorneys' fees, and costs of suit. Plaintiffs and Class Members seek an award of punitive damages as to MBUSA only.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment**

138.  Mercedes has been unjustly enriched by the Plaintiffs and Class Members through Plaintiffs' and Class Members' purchasing and/or leasing Class Vehicles from Mercedes and purchasing replacement parts and services from Mercedes that Plaintiffs and Class Members would not have purchased but for the Rear Subframe Defect and Mercedes' concealment of the same.

139.  Plaintiffs and Class Members unknowingly conferred a benefit on Mercedes of which Mercedes had knowledge, because Mercedes was aware of the defective nature of its Class Vehicles' rear subframes and the resultant severe, premature corrosion, but failed to disclose this knowledge and misled Plaintiffs and

the Class Members regarding the nature, quality, and safety of the subject Class Vehicles while profiting from this deception.

140. The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Mercedes to retain the benefit of revenue that it unfairly obtained from Plaintiffs and Class Members. This revenue included the premium price Plaintiffs and Class Members paid for the Class Vehicles and the cost of the parts and service bought from Mercedes used to replace the heavily corroded, defective rear subframes.

141. Plaintiffs and the other members of the Class, having been damaged by Mercedes' conduct, are entitled to recover or recoup damages and/or restitution as a result of the unjust enrichment of Mercedes to their detriment.

## FIFTH CAUSE OF ACTION
**Violations of New Jersey's Consumer Fraud Act**
**N.J. Stat. Ann. § 56:8-1, *et seq*.**

142. Plaintiffs, Class Members, MBUSA, and MBG are each a "person" within the meaning of the New Jersey Consumer Fraud Act ("NJCFA"). *See* N.J. Stat. Ann. § 56:8-1(d).

143. The Class Vehicles and the defective rear subframes installed in them are "merchandise" within the meaning of the NJCFA. *See* N.J. Stat. Ann. § 56:8-1(c).

144.  The NJCFA prohibits unfair trade practices, encompassing "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." *See* N.J. Stat. Ann. § 56:8-2. The NJCFA also prohibits schemes not to sell items as advertised. *See* N.J. Stat. Ann. § 56:8-2.2.

145.  At all relevant times material hereto, Mercedes conducted trade and commerce in New Jersey and elsewhere.

146.  The NJCFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes. *See* N.J. Stat. Ann. § 56:8-2.13.

147.  Mercedes has engaged in unlawful, deceptive practices in the sale of the defective rear subframes in the Class Vehicles as alleged in more detail elsewhere herein, including: (1) selling the Class Vehicles despite knowing that the rear subframes were prone to extreme, premature corrosion; refusing to fully reimburse Plaintiffs and Class Members for the replacement of their dangerously corroded rear subframes; and (2) failing to disclose and/or concealing this known defect.

148.  Mercedes knew of the Rear Subframe Defect prior to the sale of the Class Vehicles, and likely as early as 2009, through sources such as those identified in paragraph § VI.B.

149.  Mercedes knowingly and intentionally omitted and failed to disclose material facts to Plaintiffs and Class Members with respect to the Rear Subframe Defect, including the fact that, with normal use, the rear subframe would fail and/or malfunction as described elsewhere herein, and/or denying and/or misleading them as to the true cause of the Rear Subframe Defect.

150.  Mercedes intended to deceive Plaintiffs and Class Members and intended that Plaintiffs and Class Members rely on Mercedes' misrepresentations, omissions, and acts of concealment, so that Plaintiffs and Class Members would purchase the Class Vehicles equipped with defective rear subframes at a substantial out-of-pocket cost to them.

151.  Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them. Mercedes frequently blamed Plaintiffs and Class Members for the Rear Subframe Defect, labeling the condition normal "wear and tear." Mercedes refused to fully reimburse Class Members and Plaintiffs for the cost of replacing their

defective subframes and other components damaged due to the Rear Subframe Defect.

152. Plaintiffs and Class Members, like all objectively reasonable consumers, did not expect the rear subframes in their vehicles to severely and prematurely corrode, even with regular maintenance, and to put them at risk of losing control of their vehicle if the subframe fails while the vehicle is in motion.

153. Mercedes had a duty to disclose the Rear Subframe Defect to Plaintiffs and Class Members, as well as the associated costs to replace the defective rear subframes, because:

    a. Mercedes was in a superior position to know the true state of facts about the Rear Subframe Defect in the Class Vehicles;

    b. Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Rear Subframe Defect until, at the earliest, the diagnosis of severe subframe corrosion in a particular vehicle; and

    c. Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the Rear Subframe Defect prior to its manifestation.

154. Had Mercedes disclosed all material information regarding the defective rear subframes to Plaintiffs and Class Members, they would not have purchased their Class Vehicles or would have paid less for them.

155. Mercedes has long been on notice of the Rear Subframe Defect and of its violation of the New Jersey Consumer Fraud Act from various sources.

156. As a direct and proximate result of Mercedes' misconduct, Plaintiffs and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs of upwards of $3,500 required to return their Class Vehicle to a safe condition, the costs of needed present and future repairs, an inability to use the Class Vehicles for their intended purpose, and diminution of resale value, in an amount to be determine at trial.

157. Plaintiffs seek an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices and declaratory relief, as well as actual damages, together with appropriate penalties, including but not limited to treble damages, attorneys' fees, and costs of suit. *See* N.J. Stat. Ann. § 56:8-19. In addition, Plaintiffs and Class Members seek an award of punitive damages as to MBUSA only.

## IX.    <u>RELIEF REQUESTED</u>

158.  Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court to enter judgment against Mercedes, as follows:

a. an order certifying the proposed Class designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

b. a declaration that the rear subframes in Class Vehicles have a Defect that causes severe, premature corrosion and that poses a serious safety risk to consumers, and that this Defect requires disclosure;

c. a declaration that Mercedes must, at its own expense, notify owners of Class Vehicles of the Defect;

d. a declaration that any limitation on the Class Vehicles' warranty that would avoid responsibility for the Defect is void;

e. an order enjoining Mercedes to reassess all prior claims, both in and out of warranty, related to rear subframe rust and corrosion and to reimburse Class Members for money spend out of pocket for replacement of their defective rear subframes and associated costs;

f. an ordering enjoining Mercedes, upon a Class Member's request, to pay the cost of inspection to determine whether the Defect is present, with any coverage disputes adjudicated by a special master;

g. an order enjoining Mercedes from further deceptive distribution and sales practices with respect to the Class Vehicles, and to permanently repair the Class Vehicles so that they no longer possess the Rear Subframe Defect;

h. an award to Plaintiffs and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial against both MBUSA and MBG, and punitive damages as to MBUSA only;

i. an order requiring Mercedes to disgorge, for the benefit of Plaintiffs and Class Members, all, or part of the ill-gotten revenue it received from the sale of the Class Vehicles, or make full restitution thereof to Plaintiffs and Class Members;

j. an award of attorneys' fees and costs, as allowed by law;

k. an award of pre-judgment and post-judgment interest, as provided by law;

l. leave to amend this Complaint to conform to the evidence obtained in discovery or produced at trial; and

m. such other relief as may be appropriate under the circumstances.

## X.   DEMAND FOR JULY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Respectfully submitted,

Dated: March 15, 2023

Ketan A. Patel (State Bar Number 121099)
**CORPUS LAW PATEL, LLC**
P.O. Box 724713
Atlanta, Georgia 31139
Tel: (678) 597-8020
kp@corpus-law.com

Ariana J. Tadler, Esq.
Tony Kim, Esq.
**TADLER LAW LLP**

22 Bayview Avenue
Manhasset, New York 11030
Tel: (212) 946-9300
atadler@tadlerlaw.com
tkim@tadlerlaw.com

A.J. de Bartolomeo, Esq.
**TADLER LAW LLP**
P.O. Box 475847
3749 Buchanan St.
San Francisco, CA 94123
Tel: (415) 226-0260
ajd@tadlerlaw.com

*Attorneys for Plaintiffs and the Proposed Class*